**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ROBERT C. SLOVER and<br>DEBORAH A. SLOVER,<br><br>      **Plaintiffs,**<br><br>v.<br><br>THE EQUITABLE VARIABLE<br>LIFE INSURANCE COMPANY;<br>EQUITABLE LIFE ASSURANCE<br>SOCIETY OF THE UNITED STATES;<br>AXA ADVISORS, LLC;<br>J. MICHAEL MATLOCK, JOHN COBURN,<br>and DAN NICHOLS, et al.,<br><br>      **Defendants.** | Case No. 06-CV-222-JHP-SAJ |

## ORDER and OPINION

Before the Court are Plaintiffs' Motion to Remand, Defendants' Response in opposition, and Plaintiffs' Reply thereto. This case originated in the District Court of Creek County, and was removed to this Court pursuant to 28 U.S.C. §§ 1332 and 1441. Plaintiffs allege that this Court lacks subject matter jurisdiction and therefore seek remand for the following reasons:

1. Defendants failed to establish the requisite amount in controversy in their Notice of Removal; and

2. Defendants incorrectly premised their fraudulent joinder claim on common defenses, and otherwise failed to show that Plaintiffs' claims against the non-diverse Defendants present no possibility of recovery.

Upon careful consideration of the issues presented, the Court finds that Plaintiffs' arguments are without merit, and that jurisdiction in this Court is proper under 28 U.S.C. § 1332. Accordingly, Plaintiffs' Motion to Remand is DENIED.

## **Background**

In 1992, Plaintiffs purchased a "vanishing premium" insurance policy from Defendants.[1] Plaintiff Robert C. Slover was the named insured and owner of the policy, and Plaintiff Deborah A. Slover was the beneficiary of the policy.[2] The Equitable Defendants' sales agent[3] allegedly told Plaintiffs that (1) they would only have to pay premiums out-of-pocket for eleven years; (2) after eleven years, the cash value and/or dividends in the policy would pay the remaining premiums for the life of the policy; (3) Plaintiffs would receive the full amount of the interest which accrued on the cash value; and (4) Plaintiffs would have approximately $47,000 in cash value in the policy when Mr. Slover turned 65, as well as the death benefit.

The sales agent's claims were all contradicted by the terms of the written policy, which

---

[1]As of January 1, 1997, pursuant to Article 71 of the New York insurance laws, The Equitable Variable Life Insurance Co. was merged into The Equitable Life Assurance Society of the United States. On September 7, 2004, The Equitable Life Assurance Society changed its name to AXA Equitable Life Insurance Company. Thus, the properly named defendant would be AXA Equitable Life Insurance Co. These corporate entities shall be referred to collectively herein as "the Equitable Defendants." The Equitable Defendants are diverse from Plaintiffs; Defendants J. Michael Matlock, John Coburn, and Dan Nichols, however, are also Oklahoma citizens, and so will be collective referred to herein as "the non-diverse Defendants."

[2]As the beneficiary of the policy, rather than the owner thereof, Plaintiff Deborah A. Slover has no present legal interest in the policy and, therefore, no standing to bring this suit. *See* Graham v. Farmers New World Life Ins. Co., 841 P.2d 1165, 1167 (Okla. Civ. App. 1992) (noting that, without contractual obligations, court orders, or judgment, no beneficiary of an insurance policy has any vested rights in the policy until the proceeds become payable); Gaidon v. Guardian Life Ins. Co. of Am., 707 N.Y.S.2d 166, 167 (N.Y. App. Div. 2000) (holding that a beneficiary or other non-owner of a policy "lacks standing to sue individually, inasmuch as it was not he who purchased the policy"). Nonetheless, the Court will refer to Plaintiffs collectively herein.

[3]The sales agent is not a named party to this lawsuit.

was issued to Plaintiffs on April 9, 1992.[4]  The policy clearly requires payment of premiums **for life**.  Further, although the policy allowed the insured to elect to use dividends "to **help** pay" any premium then due, Plaintiffs did not choose this option, but instead elected to use dividends to provide paid-up additional whole life insurance on the insured.[5]  The policy also specifies that the policyholder "may **give up** this policy for its net cash surrender value," which was projected to be $40,500 when Mr. Slover turned 65.  By cashing out early, however, the policyholder would clearly **surrender** the death benefit.  Despite the obvious differences between the alleged sales pitch and the actual terms of the policy, and despite the integration clause, which clearly indicated that the written policy superceded any oral representations, Plaintiffs did not take advantage of the "free look" provision in the policy, which allowed Plaintiffs to cancel the policy within ten days for any reason, without cost or penalty.

Plaintiffs first began to question the terms of the policy in or around March 2003.  During this time, they spoke one time with each of the non-diverse Defendants and were allegedly "assured" each time that Plaintiffs' understanding of the sales agent's explanation of the policy was correct.  Plaintiffs filed this lawsuit in Creek County District Court on March 30, 2006.  Defendants removed the action to this Court soon thereafter.  Currently at issue is the parties' dispute over this Court's exercise of jurisdiction.

---

[4]Although Plaintiffs did not attach a copy of the policy to their Complaint, both parties have since referred to and submitted copies of the policy.  The Court's consideration of the policy is therefore proper.  *See* GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384-85 (10th Cir. 1997).

[5]It appears from the terms of the policy that the policyholder could change this election upon written application to the Equitable Defendants, but there is no evidence that Plaintiffs did so.

**Discussion**

A defendant may remove a case filed in state court to federal court if the case could have been brought in federal court originally. 28 U.S.C. § 1441(a). Federal courts have diversity jurisdiction over all civil actions involving citizens of different states and an amount in controversy in excess of $75,000. 28 U.S.C. § 1332. It is axiomatic that complete diversity is required. *See* Strawbridge v. Curtiss, 7 U.S. 267, 267-68 (1806). For purposes of removal under § 1441(a), however, the Court disregards the citizenship of defendants sued under fictitious names. Id. A defendant's right of removal also "cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921).

In this case, Defendants argue that Plaintiffs fraudulently joined the non-diverse Defendants J. Michael Matlock, John Coburn, and Dan Nichols in order to defeat diversity, and that this Court otherwise has jurisdiction pursuant to 28 U.S.C. § 1332. As the party invoking this Court's jurisdiction, Defendants bear the burden of establishing the jurisdictional requirements. Martin v. Franklin Capital Corp., 251 F.3d 1284, 1290 (10th Cir. 2001). First, Defendants must establish the requisite amount in controversy. Id. ("When, as here, the plaintiff's damages are unspecified, courts generally require that a defendant establish the jurisdictional amount by a preponderance of the evidence."). Second, in order to prove fraudulent joinder, Defendants must show that Plaintiffs either (1) committed outright fraud in pleading the jurisdictional facts, or (2) have no possibility of recovery against the non-diverse Defendants. Dodson v. Spiliada Maritime Corp., 951 F.2d 40, 42-43 & n.3 (5th Cir. 1992).

Because Defendants have alleged fraudulent joinder, the Court may pierce the pleadings. Hale v. Mastersoft Int'l Pty. Ltd., 93 F. Supp. 2d 1108, 1113 (D. Colo. 2000). Thus, the Court may consider certain underlying facts – such as the insurance policy at issue here – to determine whether the non-diverse parties are proper. Smoot v. Chi., Rock Island & Pac. R.R., 378 F.2d 879, 882 (10th Cir. 1967) ("[U]pon specific allegations of fraudulent joiner the court may pierce the pleadings, consider the entire record, and determine the basis of joinder **by any means available**.") (emphasis added; internal citations omitted). The standard, however, is stringent, and the Court must resolve any ambiguities in Plaintiffs' favor. Martin, 251 F.3d at 1289-90 ("[R]emoval statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.") (quoting Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994)).

### I.  The amount in controversy is in excess of the jurisdictional amount.

Plaintiffs allege that remand is due because Defendants failed to demonstrate in their Notice of Removal that the requisite amount in controversy was met. Because the Complaint did not set forth a specific amount, Defendants were required to perform "an economic analysis of the alleged damages supported by underlying facts." Archer v. Kelly, 271 F. Supp. 2d 1320, 1322 (N.D. Okla. 2003). The Court finds that Defendants have satisfied their burden.

Defendants' Notice of Removal (Dkt. #2) states in pertinent part:

> The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. . . . Plaintiffs have asserted claims for (a) breach of fiduciary duty (Count 1), (b) fraud by misrepresentation (Count 2), (c) fraud by suppression and omission (Count 3), negligence (Counts 4 and 8), (d) breach of contract (Count 7), and (e) conversion (Count 8) – with respect to the sale and administration by [Defendants] of a $100,000 whole life insurance policy. . . . Plaintiffs claim damages for the (i) consideration they paid for the policy (premiums paid), (ii) the benefit of their bargain (cash value, interest, and loss of the policy of insurance that was

>represented), and (iii) suffering of mental and emotional anguish. Plaintiffs also seek damages for unjust enrichment measured by premiums and related fees.

[Notice of Removal at 3, ¶ 4 (internal quotations and citations omitted).] Defendants very clearly recite that Plaintiffs' damages include "the loss of the policy of insurance" with a face value of $100,000. [Id.; *see also* Compl. at 12, ¶ 28). Under similar circumstances, many courts have held that the face value of the policy is the measure of the amount in controversy. *See, e.g.*, McCord v. Minn. Mut. Life Ins. Co., 346 F.3d 834-35 (8th Cir. 2003) (citing In re Prudential Ins. Co. of Am. Sales Practices Litig., 962 F. Supp. 450, 503 (D. N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998) ("Where plaintiffs seek equitable relief pertaining to the enforcement of insurance policies, the face value of the policy is the measure of the amount in controversy."), and Guardian Life Ins. Co. of Am. v. Muniz, 101 F.3d 93, 94 (11th Cir. 1996) (noting that the face value of life insurance policies constitutes the amount in controversy)); *see also* Mass. Cas. Ins. Co. v. Harmon, 88 F.3d 415, 416 (6th Cir. 1996) (following the "unanimous federal rule" that the face value of the policy must be considered in determining whether the jurisdictional amount has been satisfied). In this case, the face value of the policy, taken alone, satisfies the jurisdictional amount.

The Court further notes that Plaintiffs seek other compensatory and punitive damages, both of which may be considered in determining the amount in controversy. Flowers v. EZPawn Okla., Inc., 307 F. Supp. 2d 1191, 1198 (N.D. Okla. 2003) (citing Bell v. Preferred Life Assur. Soc'y, 320 U.S. 238, 240 (1943)). Plaintiffs also claim attorney fees, which Defendants rightly note can be substantial in and of themselves. Taken together, the Court finds that Defendants have made an adequate showing that the amount in controversy in this case exceeds $75,000, such that jurisdiction may be properly exercised by this Court. *See, e.g.*, St. Paul Mercury

Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938) (setting forth the axiomatic standard that "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal").

Finally, the Court notes that, as part of their Notice of Removal, Defendants attached correspondence indicating that they had invited Plaintiffs to stipulate to damages being less than $75,000, which invitation Plaintiffs refused, stating only that they had pled in compliance with 12 Okla. Stat. § 2008.  Section 2008 provides, "Every pleading demanding relief for damages in money in excess of Ten Thousand Dollars ($10,000.00) shall, without demanding any specific amount of money, set forth only that the amount sought as damages is in excess of Ten Thousand Dollars ($10,000.00), **except in actions sounding in contract**." Id. § 2008(A)(2) (emphasis added).  Because Plaintiffs' Count 7 recites a breach of contract claim without including a specific dollar amount, an inference could be made that Plaintiffs were deliberately attempting to obscure the true amount in controversy.  Certainly, Plaintiffs' failure to stipulate to a lesser amount makes such inference all the more reasonable.

For all of the foregoing reasons, the Court finds that the requisite amount in controversy has been established.  The Court therefore declines to remand the case on this basis.

## II.   The non-diverse Defendants are fraudulently joined.

Defendants J. Michael Matlock, John Coburn, and Dan Nichols are residents of Oklahoma who worked as insurance agents for the Equitable Defendants.  Plaintiffs claim one sole contact with each of the non-diverse Defendants, all of which were initiated by Plaintiffs,

yet assert all but one claim against them.⁶  Interestingly, although the gravamen of Plaintiffs'

case appears to be fraudulent inducement to purchase the insurance policy at issue here,

Plaintiffs did not name the individual agent who sold them the policy in 1992, but only those

individuals with whom they spoke in March 2003, when they began to question the terms of their

policy.  Plaintiffs' failure to name **all** individual agents involved in this transaction – especially

the one agent with whom they presumably had the most contact – raises a suspicion that those

who were named were joined solely to destroy diversity.

Such suspicion is, of course, insufficient to prove fraudulent joinder. Removal statutes

are narrowly construed.  Martin, 251 F.3d at 1290.  If outright fraud in the pleading of

jurisdictional facts cannot be proven, the question become more closely akin to that of whether

the plaintiff has properly stated a claim upon which relief may be granted under Fed. R. Civ. P.

12(b)(6).⁷  *See* Frontier Airlines, Inc. v. United Air Lines, Inc., 758 F. Supp. 1399, 1404 (D.

---

⁶Plaintiffs did not include the non-diverse Defendants in Count 5 of their Complaint, which alleges negligent hiring, as these Defendants obviously did not hire themselves.

⁷The Equitable Defendants and John Coburn filed a Motion to Dismiss (Dkt. #11) on April 28, 2006.  Defendants J. Michael Matlock and Dan Nichols filed their Motion to Dismiss on May 18, 2006 (Dkt. #15), and incorporated the other defendants' motion by reference.  Plaintiffs filed the instant Motion to Remand (Dkt. # 17) on May 22, 2005 and argued that, because the Court must decide the issue of remand first, the Motions to Dismiss should be stayed (Dkt. #18).  Instead, because fraudulent joinder and dismissal are considered according to similar standards, and in the interest of judicial efficiency, the Court ordered Plaintiffs to respond (Dkt. #22), which they did on June 12, 2006 (Dkt. #24).  The Equitable Defendants and John Coburn entered a Reply (Dkt. #26) on June 26, 2006.

The Court notes that it may not "pre-try" Plaintiffs' entire case on the Motion to Remand. *See* Frontier Airlines, 758 F. Supp. at 1404 (citing Smoot, 378 F.2d at 882); *see also infra* Section II.D (distinguishing improper joinder from meritless suit).  Where, as here, issues briefed by the parties are subject to summary determination, however, the Court may make the relevant factual determinations.  Id.  Defendants' Motions to Dismiss also being at issue shall therefore be considered jointly herein.

Colo. 1989); Fine v. Braniff Airways, Inc., 302 F. Supp. 496, 497 (W.D. Okla. 1969). The burden on a defendant to prove fraudulent joinder is high; "its presentation must be one that 'compels the conclusion that the joinder is without right and made in bad faith.'" Frontier Airlines, 758 F. Supp. at 1404 (quoting Chesapeake & Ohio Rwy. Co. v. Cockrell, 232 U.S. 146, 152 (1914)). If the plaintiff clearly cannot maintain a state law claim against the non-diverse defendant, however, such defendant shall be considered fraudulently joined. Id.

### A.  Plaintiffs have not made allegations as to every material element of their claims.

Many – if not all – of the claims made against the non-diverse Defendants here are facially inapposite because Plaintiffs cannot establish the necessary elements. In the complaint, the plaintiff must make at least minimal factual allegations, either direct or inferential, as to every material element of the claim. Gooley v. Mobil Oil Co., 851 F.2d 513, 515 (1st Cir. 1988); Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Only if it "appears beyond doubt that plaintiff could prove no set of facts entitling it to relief," will the Court grant a 12(b)(6) motion to dismiss, Brannon v. Boatmen's Bancshares, 952 F. Supp. 1478, 1482 (W.D. Okla. 1997) (internal citations and quotations omitted), or by extension, make a finding of fraudulent joinder, Frontier Airlines, 758 F. Supp. at 1404.

First, Plaintiffs' assertion of a conversion claim (Count 9) against the non-diverse Defendants is wholly unsupported by any allegation that these Defendants exercised dominion or control over any specific property belonging to Plaintiffs.[8] A claim for conversion must establish that "(a) [the plaintiff] owns or has a right to possess the property in question, (b) th[e]

---

[8] Defendants J. Michael Matlock and Dan Nichols deny that Plaintiffs asserted conversion (Count 9) against them.

9

defendant wrongfully interfered with such property right, and (c) the extent of [the] damages." White v. Webber-Workman Co., 591 P.2d 348, 350 (Okla. Civ. App. 1979).  Generally, "only *tangible personal property* may be converted," such that conversion will not lie where the seller has the right to recover money, which is considered to be *intangible* personal property. Shebester v. Triple Crown Ins., 826 P.2d 603, 607 (Okla. 1992).  Thus, because Plaintiffs cannot establish the elements of a conversion claim against the non-diverse Defendants, said claim must fail as a matter of law.

Second, Plaintiffs' allegation of negligence per se (Count 8) must fail as a matter of law. It is axiomatic that a claim for negligence per se will lie only where a plaintiff asserts that the defendant has violated a statutory duty and that "the claimed injury (a) was caused by the law's violation, (b) was of the type intended to be prevented by the statute, and (c) the injured party was a member of the class meant to be protected by the statute."  Lockhart v. Loosen, 943 P.2d 1074, 1078 (Okla. 1997).  Plaintiffs here have not cited any statute, nor established any other element necessary to support a negligence per se claim.

Third, Plaintiffs' assertion of a breach of contract claim (Count 7) against the non-diverse Defendants is wholly unsupported by any allegation that these Defendants were parties to the insurance policy or any other contract with Plaintiffs.[9]  At all times, the non-diverse Defendants

---

[9]Defendants J. Michael Matlock and Dan Nichols also deny that Plaintiffs asserted breach of contract (Count 7) against them. [Mtn. to Dismiss at 2, n.1.] The Court agrees with these Defendants that the Complaint "is remarkably vague and imprecise in its descriptions of which claims are made against which Defendants, often broadly referring to "Defendants" even when the context makes clear that [the non-diverse Defendants neither] had or could have had any role in or connection with the matter being described." [Id.] Regardless, the Court finds that Plaintiffs' breach of contract claim fails as a matter of law, as alleged against all or any of the non-diverse Defendants.

were acting as agents of the Equitable Defendants. They were not the selling agents; thus, the "contract theory of an insurance agent's liability . . . based on failure to obtain any insurance as promised [or the] failure to obtain insurance as requested" does not apply to the non-diverse Defendants. *See* Swickey v. Silvey Cos., 979 P.2d 266, 268 (Okla. Civ. App. 1999) (noting that plaintiff must establish that "the insurance agent agreed to procure insurance coverage effective as of a certain date and time, or of a certain breadth, and then failed to do so" in order to prevail). Moreover, it is axiomatic that "an agreement made with a known agent for a disclosed principal is a contract with the principal alone." *See* Shebester, 826 P.2d at 609. Plaintiffs do not allege that the non-diverse Defendants' relationship to the Equitable Defendants was undisclosed. Because "an agent is contractually liable *only when acting for an undisclosed principal*," *see* id. at 609 n.21, Plaintiffs' breach of contract claim against the non-diverse Defendants clearly must fail as a matter of law.

Fourth, Plaintiffs' assertion of an unjust enrichment claim (Count 6) against the non-diverse Defendants is wholly unsupported by any allegation that these individuals personally collected Plaintiffs' premiums or otherwise benefitted financially at Plaintiffs' expense. A claim for unjust enrichment will lie only where "it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." Lapkin v. Garland Bloodworth, Inc., 23 P.3d 958, 961 (Okla. Civ. App. 2000) (quoting N.C. Corff P'ship, Ltd. v. Oxy USA, Inc., 929 P.2d 288, 295 (Okla. Civ. App. 1996)). Here, although the Equitable Defendants might arguably have profited from Plaintiffs' purchase and retention of the policy,[10]

---

[10] To the extent that payments were made according to the express terms of the policy, however, the Equitable Defendants' profit cannot truly be considered "unjust enrichment."

the non-diverse Defendants – who were not the selling agents, but merely provided customer service to Plaintiffs – clearly did not obtain any direct benefit. *See* N.C. Corff P'ship, 929 P.2d at 295. Thus, Plaintiffs' claim for unjust enrichment against the non-diverse Defendants must fail as a matter of law.

Fifth, Plaintiffs' claim for breach of fiduciary duty (Count 1) must fail because Oklahoma seemingly does not recognize a fiduciary duty by an insurance agent to an insured. Swickey, 979 P.2d at 269 ("There are no Oklahoma cases holding that an insurance agent owes a fiduciary duty to a prospective insured, or to an established customer with respect to procurement of an additional policy."). Fiduciary status may arise where there is "overmastering influence" on one side or "dependency or trust, justifiably reposed" on the other, even if no fiduciary duty is owed per se. Roberson v. PaineWebber, Inc., 998 P.2d 193, 198-99 (Okla. Civ. App. 2000) (citing MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Express, Inc., 886 F.2d 1249, 1257 (10th Cir. 1989)); *see also* Swickey, 979 P.2d at 269 (noting that an agent has "a duty to act reasonably, given the specialized knowledge it possessed of the terms and conditions of insurance policies generally[, but,] that specialized knowledge, such as it [is, does] not . . . create such a special relation . . . as to make [the agent] a fiduciary"). Here, the non-diverse Defendants had one telephone contact each with Plaintiffs, which contacts were initiated by Plaintiffs, and were limited solely to customer service issues, rather than sales or distribution. Further, because Plaintiffs possessed the policy and were charged with knowledge of its terms,[11] the parties were not truly on unequal footing.

Oklahoma law does recognize, however, "a duty on the part of [the agent] to exercise

---

[11]*See infra* Section II.B.

reasonable care and skill in performing its tasks, *i.e.*, procuring insurance and making any necessary corrections or adjustments after a policy is issued.  An agent has the duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance and an agent is liable to the insured if, by the agent's fault, insurance is not procured as promised and the insured suffers a loss." Id.  The imposition of tort liability is, however, an exception to the general rule, and is proper only "[i]f the agent, acting within the scope of his authority, in pursuit of a lawful purpose, steps aside to engage in a tortious act to the injury of property or personal rights of another . . . ." Bane v. Anderson, Bryant & Co., 786 P.2d 1230, 1234 (Okla. 1989) (internal citations omitted).  Thus, Plaintiffs' allegations of fraud (Counts 2-3) and negligence (Count 4) against the non-diverse Defendants appear to require a closer look.

### B.  Plaintiffs' allegations of fraud and negligence are contradicted by the terms of the policy.

The clear and unambiguous language of the policy squarely contradicts the allegedly fraudulent and/or negligent oral statements made by the non-diverse Defendants.[12]  It is axiomatic that oral discussions and pre-contract negotiations are merged into, and superceded by, the terms of an executed writing.  *See, e.g.*, Bonner v. Okla. Rock Corp., 863 P.2d 1176, 1180 (Okla. 1993).  Indeed, the policy itself contains a comprehensive integration clause which expressly states:

---

[12]Plaintiffs admit that the non-diverse Defendants were in no way involved in the sale of the policy.  Thus, to the extent that agents must exercise reasonable care in **procuring** the policy, Plaintiffs' negligence claim must fail.  Further, Plaintiffs do not allege that the non-diverse Defendants failed to make necessary corrections to the policy, as a claim for negligence would seem to require.  Instead, Plaintiffs claim that the non-diverse Defendants "induced" them to keep a policy that did meet their expectations. This may be a distinction without a difference, as the terms of the policy control regardless.

> This policy, and the attached copy of the application for this policy, make up the entire contract.  Only our President or one of our Vice Presidents can modify this contract or waive any of our rights or requirements under it.  The person making these changes must put them in writing and sign them.

[Mtn. to Dismiss at 5-6 (citing Policy at 7).]  Such clause is competent and enforceable against the insured under Oklahoma law.  Travelers Ins. Co. v. Morrow, 645 F.2d 41, 44 (10th Cir. 1981).  Yet, based solely upon their recollection of oral statements made between three and fourteen years ago, Plaintiffs now seek to overlook the integration clause and challenge the policy.  Clearly, however, Plaintiffs' claims cannot lie.  Plaintiffs had a duty to read their policy, and their failure to do so "does not relieve [them] from its provisions."  Id.  Of course, an allegation of fraud at the point of sale could overcome the parol evidence rule.  Bonner, 863 P.2d at 1180-81 & n.14.  However, because the non-diverse Defendants did not participate in the sale of this policy, the exception to the parol evidence rule does not apply to them.  Therefore, as to the non-diverse Defendants, the policy provisions themselves control.

Moreover, to the extent that Plaintiffs' misrepresentation claim (Count 2) involves promises regarding the **future** performance of the policy, such claim cannot lie.  Here, Plaintiffs claim that the non-diverse Defendants made statements to the effect that future premiums could be paid by dividends or cash value.  [Compl. ¶ 8.]  To establish a claim of misrepresentation, Plaintiffs must show that the non-diverse Defendants made an actionable "material misrepresentation," knowing that it was false, or acting with reckless disregard for the truth.  Roberson, 998 P.2d at 197.  To be actionable, a misrepresentation "must be regarding existing facts and not . . . future events."  Hall v. Edge, 782 P.2d 122, 128 n.4 (Okla. 1989).  Although statements concerning future events may be actionable if they "involved a matter peculiarly within the speaker's knowledge," *see* id. at 128, such is not the case here.  To the extent that the

non-diverse Defendants' statements were expressly contradicted by the terms of the policy, such statements clearly were **not** "peculiarly within the speaker's knowledge," and Plaintiffs cannot reasonably be said to have "relied" on such statements. In short, "[a]n action for fraud may not be predicated on false statements when the allegedly defrauded party could have ascertained the truth with reasonable diligence." Bankers Trust Co. v. Brown, 107 P.3d 609, 614 (Okla. Civ. App. 2004) (quoting Silver v. Slusher, 770 P.2d 878, 881 (Okla. 1988)). Thus, Plaintiffs' fraud by misrepresentation (Count 2) and fraud by suppression and omission (Count 3) claims must fail as a matter of law.

### C. Plaintiffs' claims are time-barred.

Plaintiffs purchased the subject insurance policy in 1992. Said policy issued on April 9, 1992. The policy contains a "free-look" provision which granted Plaintiffs ten days to examine the policy, and to cancel the policy for a full refund within the ten-day period if they were not satisfied. Although they had the right to cancel the policy at no cost, Plaintiffs chose to retain the policy. In or around March 2003 – eleven years after the policy issued – Plaintiffs began to question the terms of the policy. At this time, Plaintiffs spoke with the non-diverse Defendants. Plaintiffs did not file suit, however, until March 30, 2006.

Plaintiffs' claims carry statutes of limitations ranging from two to five years.[13] Plaintiffs argue, *inter alia*, that because they did not "discover" their causes of action until sometime in April 2004, the statutes of limitations do not apply. [*See* Compl. ¶ 8, Resp. at 12-13.] Such

---

[13]Plaintiffs' claims for breach of fiduciary duty (Count 1), fraud (Counts 2-3), negligence (Counts 4-5, 8), and conversion (Count 9) are all subject to a two-year statute of limitations. 12 Okla. Stat. § 95(3). The breach of contract claim (Count 7) is subject to a five-year statute of limitations. Id. § 95(1). The unjust enrichment claim (Count 6) is subject to a three-year statute of limitations. Id. § 95(2).

argument is misleading, at best.

Of course, in the case of fraud, the limitations period may be tolled "until the fraud is discovered or until the date the defrauded party, by the exercise of ordinary diligence, might have recognized the deception." Smith v. Baptist Found. of Okla., 50 P.3d 1132, 1137-38 (Okla. 2002). However, the misrepresentations Plaintiffs complain of here "could reasonably have been discovered during the 10-day review period after delivery of the policy." Cole v. Equitable Life Assur. Soc'y of the U.S., 707 N.Y.S.2d 56, 56-57 (N.Y. App. Div. 2000); *see also* In re Northwestern Mut. Life Ins. Co. Sale Practices Litig., 70 F. Supp. 2d 466, 484-85, 490, 494 (D. N.J. 1999) (noting, in a similar case involving Illinois, New Jersey, and Alabama law, that the statute of limitations starts to run when a plaintiff receives documents that contradict the alleged misrepresentations, and that "the policies by themselves . . . should have provoked inquiry . . . leading to discovery of the alleged fraud"); Thelen v. Mass. Mut. Life Ins. Co., 111 F. Supp. 2d 688, 693 (D. Md. 2000) (holding that the statute of limitations starts to run at the time the policy is issued and that to find otherwise would reward plaintiffs for their own delay); Matter of Woodward, 549 P.2d 1207, 1209 (Okla. 1976) (holding that the "party defrauded will be deemed to have had notice of fraud from date means of discovering such fraud came into his hands and fraud will be deemed to have been discovered upon that date"). In other words, where, as here, a plaintiff "refrain[s] from the pursuit of inquiries plainly suggested by the facts," such plaintiff "may not benefit from a rule tolling the applicable statute of limitations." Smith, 50 P.3d at 1140. Indeed, by logical extension of this reasoning, the Court finds that **all** of Plaintiffs' claims are time-barred.

It is well established under Oklahoma law that insureds have a duty "to examine, read, and know the contents of the policy before accepting and paying the premium therefor, and, having failed or neglected to do so[, they are] estopped from denying knowledge of its terms or conditions." Liverpool & L.&G. Ins. Co. v. T.M. Richardson Lumber Co., 69 P. 936, 937 (Okla. 1902). Plaintiffs received the policy at issue here on April 9, 1992, and by the terms of the policy, had ten days to reject it, without cost or penalty, if it did not meet their expectations. Plaintiffs do not alleged that they were "tricked" into not reading the policy, *see* id., nor do they allege any violation of the "free look" clause. Rather, Plaintiffs elected to keep the policy, and are therefore deemed to have been on notice of the policy's terms since April 1992. Thus, the longest statute of limitations applicable here would have expired in April 1997.

### D.   Plaintiffs' "common defense" argument is inapposite.

As discussed above, Plaintiffs' claims against the non-diverse Defendants are inappropriate for many reasons, some of which apply solely to the issue of joinder, and some of which apply more broadly to the merits of the case. Plaintiffs argue that Defendants cannot rely on so-called "common defenses" to defeat remand. The "crux" of the common defense rule is:

> "[O]nly" where the showing that there is no reasonable basis for predicting state law would allow the plaintiff to recover against the resident defendant is such that the *same* showing "equally" and "necessarily" "compels" the conclusion that recovery is precluded against "all" non-resident defendants, then there is no improper joinder, but simply a wholly meritless suit.

Boone v. Citigroup, Inc., 416 F.3d 382, 390 (5th Cir. 2005). The rule does **not** apply when findings "made as to the resident defendants do[] not equally and necessarily compel dismissal of all claims against all diverse defendants." Id. Here, Plaintiffs' claims against the non-diverse Defendants and the Equitable Defendants are based, at least in part, on distinct theories of

recovery; indeed, Plaintiffs have asserted one claim – for negligent hiring, training, and/or supervision – solely against the Equitable Defendants.  Further, Plaintiffs do not claim that the non-diverse Defendants were in any way involved in the sale of the policy.  Because Plaintiffs' claims are "analytically distinct," the failure of their claims against the non-diverse Defendants does not automatically require dismissal of the claims against the Equitable Defendants, and Plaintiffs' "common defense" argument is inapposite.  *See* id. at 391-92.

Because none of the claims made by Plaintiffs can lie against the non-diverse Defendants, the Court finds that said Defendants were fraudulently joined.  Plaintiffs' Motion to Remand is DENIED, and the Court may therefore properly exercise jurisdiction over the remaining parties.

### III.  **Plaintiffs have failed to state a claim upon which relief may be granted.**

Because Plaintiffs' claims are all time-barred, as to all Defendants, dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate.  Defendants' Motions to Dismiss are therefore GRANTED in their entirety.

### Conclusion

For the foregoing reasons, the Court finds that the non-diverse Defendants were fraudulently joined.  There being complete diversity between the properly joined parties, and an amount in controversy in excess of the requisite amount, this Court may properly exercise jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1332 and 1441.  Plaintiffs' Motion to Remand is accordingly DENIED.

Because the standards for considering fraudulent joinder and dismissal under 12(b)(6) are so similar, the reasoning set forth above also applies to the Court's disposition of Defendants' Motions to Dismiss. In addition, the Court specifically finds that all of Plaintiffs' claims are time-barred as to all Defendants. Plaintiffs have failed to set forth any claim upon which relief may be granted, and Defendants' Motions to Dismiss are GRANTED in their entirety. Because Plaintiffs cannot overcome the applicable statutes of limitations, the Court further finds that amendment would be futile, and this case is therefore DISMISSED with prejudice, pursuant to Curley v. Perry, 246 F.3d 1278, 1281-82 (10th Cir. 2001).

IT IS SO ORDERED this 9th day of August 2006.

*[signature: James H. Payne]*
James H. Payne
United States District Judge
Northern District of Oklahoma